**FILED**

OA 91  Criminal Complaint

# United States District Court

JUL 1 6 2008

RICHARD W. WIEKING
CAILFORNIA U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

NORTHERN _____ DISTRICT OF _____

UNITED STATES OF AMERICA
V.

**CRIMINAL COMPLAINT**

Mei Ling Chen
aka Chen Mei Ling

Case Number: 3 - 08 - 70434 MEJ

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my

knowledge and belief. On or about July 15, 2008 _____ in San Francisco _____ County, in

(Date)

the Northern _____ District of California _____ defendant(s) did,

(Track Statutory Language of Offense)

knowingly and intentionally, with intent to defraud, bring into the United States and keep in possession or conceal any falsely made, forged, counterfeited, or altered obligation or other security of the United States, specifically United States currency

in violation of Title 18 _____ United States Code, Section(s) 472 _____ .

Maximum penalties: 20 years in prison, $250,000 fine, 3 years of supervised release, and a $100 special assessment.

I further state that I am a(n)  Special Agent of the U.S. Secret Service _____ and that this complaint is based on the following facts:

See attached affidavit of William P. Bishop

Continued on the attached sheet and made a part hereof:      ☒ Yes      ☐ No

Approved
As To  Candace Kelly
Form:      AUSA

_____
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

July 16, 2008

Date

at  San Francisco, California _____

City and State

Maria-Elena James          United States Magistrate Judge

Name & Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT OF WILLIAM P. BISHOP

William P. Bishop, after being duly sworn, deposes and says as follows:

1.       I am a Senior Special Agent of the United States Secret Service (hereinafter USSS) and have been so employed since March of 1989. My prior employment was as a Special Agent with the Internal Revenue Service, for a total of twenty one years of Federal Law Enforcement experience. I am currently assigned to the Counterfeit Squad in the San Francisco Field Office. As part of my official duties, it is my responsibility to investigate financial crimes including identity theft, counterfeit identifications, counterfeit currency, counterfeit traveler's checks, counterfeit corporate checks, counterfeit personal checks, as well as other cases involving counterfeit securities, bank fraud and financial crimes. During my tenure I have completed training at the Federal Law Enforcement Training Center, in Glynco, GA., and the United States Secret Service Training Center in Beltsville, MD. I have been trained and briefed regarding the manufacturing processes involved in the production of genuine U.S. currency, which included tours of the Crane Paper Factory in Massachusetts, where genuine U.S Currency paper is manufactured and the Bureau of Engraving and Printing in Washington, DC, where genuine U.S. Currency is printed.

2.       As a Senior Special Agent with the USSS, I have participated in criminal investigations relating to identity theft, counterfeit identification, counterfeit currency, counterfeit travelers checks, counterfeit corporate checks, counterfeit personal checks and bank fraud. I have also been briefed by and had conversations with other Special Agents

1

within the USSS about other Identity theft, counterfeit currency, counterfeit travelers checks cases, counterfeit corporate checks, counterfeit personal checks, both locally and nationally as well as the crimes of bank fraud, and credit card fraud. I have also conducted numerous investigations regarding the manufacturing, distribution and utterance of counterfeit currency. I have personally examined millions of dollars in counterfeit currency. I have provided training to police, financial institutions, merchants and other interested parties in the security aspects of genuine currency and the detection of counterfeit currency. I have also investigated numerous other cases unrelated to financial crimes, including domestic and international terrorism, threats to the President and weapons theft.

3.      As set forth herein, I have probable cause to believe that Mei Ling Chen has committed violations of law involving counterfeit currency, specifically, a violation of Title 18 United States Code 472 -- Uttering counterfeit obligations or securities. Section 472 makes it a criminal offense to, with intent to defraud, pass, utter, publish, or sell, or attempt to pass, utter, publish, or sell, or with like intent bring into the United States or keep in [ones] possession or conceal any falsely made, forged, counterfeited or altered obligation or security of the United States.

4.      I make this affidavit based upon my (a) personal observations and knowledge; (b) conversations with other law enforcement agents who have participated in this investigation; and (c) review of documents connected with the investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a criminal complaint, I have not included details of every aspect of this investigation of which I am aware.

2

## PROBABLE CAUSE

5.      I am working with US Immigration and Customs Enforcement (ICE) Special Agent

Brian Kawabata on an investigation involving counterfeit currency known as "Supernotes." SA

Kawabata is assigned to the San Francisco International Airport (SFO) and has been employed as

an Inspector or Special Agent for the US Customs Service and ICE for the past 12 years. He has

participated in numerous investigations involving terrorism, smuggling of contraband, money

laundering, and various import/export violations. He has participated in the execution of

numerous arrest and search warrants.

6.      I received the following information from SA Kawabata:

      A.      On July 10, 2008, Customs and Border Protection at the San Francisco

            International Airport Postal Facility conducted a random search for parcels

            containing prohibited food items from Taiwan. A parcel was sent from Jeng Su

            Bin in Taiwan to Mei Ling Chen, 325 Florence Street, Sunnyvale, CA 94086.

            The green customs declaration on the outside of the package, which appears to be

            signed by Jeng Su Bin, listed the contents as "candy" and "books". The box on

            the declaration marked "gift" was also checked. This parcel was selected for a

            border inspection and was opened on July 11, 2008. The parcel is described as

            follows:

            One (1) Express parcel box measuring approximately 16"x14"x13" with United

            States Postal Service (USPS) Tracking No. EE492300645TW, and the air waybill

            attached thereto identifying the SENDER as "SF No. 1 Lane 170 Kanpin Street

3

Saokang District Kaoshiung Taiwan Jeng Su Bin Tel. 0915014137", and the
RECIPIENT as "325 Florence St Sunny Vele CA 94086 CHEN-MEI-LING USA
Tel. 0933323797";

B.    Customs and Border Protection (CBP) Agriculture Specialist Fernando Orozco
conducted the border search of the parcel. He opened the bottom of the parcel to
avoid damaging the front portion of the parcel containing the air way bill. Upon
opening the parcel from the bottom, he found the parcel to contain the following
layers, starting from the bottom of the box with the 12th layer:

(1)    12th layer contained two bags of dried seafood;

(2)    11th layer contained two bags of dried seafood;

(3)    10th layer contained two bags of dried seafood;

(4)    9th layer contained a black pouch with suspected counterfeit
currency wrapped in newspaper with two bags of dried seafood to
the sides of the black bag;

(5)    8th layer contained two bags of dried seafood;

(6)    7th layer contained two bags of dried seafood;

(7)    6th layer contained a black pouch with counterfeit currency
wrapped in newspaper;

(8)    5th layer contained two bags of dried seafood;

(9)    4th layer contained two bags of dried seafood;

(10)    3rd layer contained two black pouches with suspected counterfeit
currency wrapped in newspaper;

4

(11)    2nd layer contained two bags of dried seafood;

(12)    1st layer contained two bags of dried seafood (this would be the first layer if the parcel were opened from the top)

C.    The parcel contained approximately 20 packages of dried seafood and the equivalent of approximately $380,000 in suspected counterfeit currency. Three of the black pouches contained 10 stacks of approximately 100 suspected counterfeit notes and one black pouch contained 8 stacks of approximately 100 suspected counterfeit notes. The contents of the parcel were ordered in such a way as to conceal the suspected counterfeit currency.

D.    Employees of CBP conducted research on the intended recipient of the parcel and discovered that Mei Ling Chen arrived at SFO as a passenger aboard Cathay Pacific flight 872 from Hong Kong on July 7, 2008. Her initial flight originated in Taiwan. She entered the United States on a "B2" visa for business that is valid until January 6, 2009. Her date of birth is September 16, 1961. She listed her address while in the United States as, "325 Florence St. Sunny Vele, CA 94086." Her passport number is 213296835 issued by Taiwan, Republic of China. She signed her customs declaration "CHEN-MEI-LING."

E.    Chen's nonimmigrant visa application listed her birthplace as Kaohsiung, Taiwan. Her address was listed as 91 Ping He Road, Hsiao Fang, Kaohsiung, Taiwan. She listed her employer as Shang Ching Fruit Juice Ade Store. She listed her home

5

telephone number as 078157096, work number as 078157096, and other number
as 0933323797. Her contact person on the application was John Chang with
phone numbers 408-746-0429, 510-489-6800, and 408-390-2722.

F.    Chen previously traveled to the United States on November 5-15, 2007, May 14-
      31, 2007, February 5-13, 2007, September 5-25, 2006, and August 15, 1997.

G.    Database Autotrack XP listed the following persons as residents at 325 Florence
      Street, Sunnyvale, CA: Henry W. Chang, Sandy Chang, Tony W. Chang, Abel Y.
      Wu Chang, John Y. Chang, Susanna N. Chang, Jessy J. Chang, Eunice L. Chang, and
      Sam W. Chang.

7.    On July 11, 2008, USSS Special Agent John Bourque and I responded to the San
Francisco International Airport Postal Facility at the request of ICE Special Agent Lee Duck to
examine the suspected counterfeit currency located in the above described package. We were
shown one of the black pouches containing an estimated $100,000 in suspected counterfeit $100
Federal Reserve Notes (FRNs). SA Bourque and I examined several of these notes with
magnifying equipment, comparing them with known printing defects of a family of counterfeit
notes commonly known as "Supernotes."

8.    The United States Secret Service has led an eighteen year investigation into the
production and distribution of this highly deceptive family of counterfeit notes, sometimes
referred to as "Supernotes". First detected in 1989, the Supernote is of such high quality that it

6

often goes undetected until it reaches the Federal Reserve Bank. The investigation into its origin and distribution has been a top priority for the Secret Service. The Supernote investigation is an ongoing strategic case with national security implications. This investigation has spanned the globe, involving more than 130 countries and resulting in more than 170 arrests.

The Supernote primarily circulates outside of the United States. Though collectively referred to as the Supernote, it is actually a family of different versions of $100 and $50 denomination counterfeit notes, all of which are circularized (categorized) by the Secret Service.

9.     Supernotes have been examined forensically by USSS counterfeit specialists. Printing defects have been cataloged and the counterfeit notes have been classified by the USSS under several circular numbers, including C-21555, C-22485, C-22500, C-22865 and C-23183. The forensic examinations of the counterfeit notes described in these circulars have determined that all of these subject counterfeit notes originate from a common source and are part of a larger "family" of counterfeit notes.

10.    Our examination of several of the counterfeit notes from the subject package determined that they all contained printing defects common to Supernotes. Further, I contacted SA Peter Folger at the San Francisco Field Office and provided certain numeric identifiers from two of the counterfeit notes. SA Folger checked these numeric identifiers in the USSS Counterfeit Tracking Database and advised me that the numeric identifiers for both notes were identified in the database as belonging to circular C-22500.

11.    Based on my training and experience, I believe that based on printing defects noted

7

during examination of a portion of the notes and comparisons of numeric identifiers on a portion
of the notes to a database of numeric identifiers of known counterfeit, the notes found in the
parcel destined for 325 Florence Street, Sunnyvale, California are counterfeit.

12.     The destination address of the subject parcel is listed as "325 Florence Street, Sunny
Vele, CA 94086". I learned from ICE Special Agent Brian Kawabata that ICE SA Kenneth
Okazaki drove to 325 Florence Street, Sunnyvale and described the residence as an apartment
complex with four units. Based on the similarity between the address listed on the package and
the existing address of 325 Florence Street, Sunnyvale, California with the same zip code as the
address listed on the subject parcel, I believe that the sender was simply mistaken when he/she
wrote "325 Florence Street, Sunny Vele, CA 94086" as the recipient's address. The house
located at 325 Florence Street, Sunnyvale, California is more specifically described as follows:
A three story apartment complex, off white in color, with a tan trim. The complex contains four
units. The lowest level is a garage located below ground level. The second level is at the street
level with a porch on the south side of the building. The numbers "325" are located at the
bottom right corner of the building. The letter "A" is on the first door closest to the street. All
entrances to the four units are facing south.

13.     Based on my training and experience with respect to foreign counterfeiting operations, I
know that persons within these operations often use the mail system to ship packages containing
counterfeit currency into the United States. I also know that the USSS believes Supernotes are
manufactured in Asia. I have also learned that in 2004, significant amounts of Supernotes were
identified as having come from Kaohsiung, Taiwan. Further, I know, based on my examination

of counterfeit currency received in the USSS San Francisco Field Office, that Supernotes are passed and circulated in the San Francisco Bay Area.

14.    Continuing on July 11, 2008, I organized a surveillance team of USSS Special Agents to respond to 325 Florence Street, Sunnyvale, California. Members of the surveillance team were provided copies of a photograph of Mei Ling Chen, which had been provided to me by ICE Special Agent Brian Kawabata who informed me that he obtained it from her non-immigrant visa application. The surveillance team observed an Asian female exit apartment A, smoke a cigarette on the sidewalk and return to apartment A on multiple occasions. Special Agent Justin Glon subsequently advised me that this female he observed entering and exiting Apartment A appeared to be Mei Ling Chen.

15.    According to US Postal Inspection Service Inspector Eva Chan, one of the USPS letter carriers for the route covering 325 Florence Street is Ronnie Aquino. Aquino advised that only one family occupies all four units. Regardless of the address on a letter or package Aquino only delivers mail to the mailboxes for units A and D. The following people received mail on July 11, 2008: Lei Fu (apartment C), Abel Wuchang (apartment C), Tony Chang (no apartment specified), Henry W. Chang (no apartment specified), Eunice Chang (no apartment specified), Mindy Pham (apartment A), Jessy J. Chang (apartment C), Li Li Chang (no apartment specified), and Abel Chang (no apartment specified).

16.    Express mail parcels require a signature from the recipient of the package. Accordingly, the mail carrier would have to deliver any express mail parcel to an actual person, rather than a

9

mailbox. In the event that a package does not indicate a specific apartment letter in the address, the mail carrier would have to knock on the various apartment doors in order to ascertain whether the actual recipient was present in order to sign for the package.

17. On July 12, 2008, SA Justin Bundy and I further examined the subject package and contents. SA Bundy is a trained forensic scientist, previously employed as such by the Minnesota Bureau of Criminal Apprehension. Among other things, he and I examined random counterfeit notes from each of the black plastic pouches and found that they all contained printing defects consistent with Supernotes. Further we checked the numeric identifiers for random counterfeit notes and determined they match those from notes classified C-22500. We determined that three of the pouches contained 10 stacks of approximately 100 counterfeit notes and one contained 8 stacks of approximately 100 counterfeit notes for an approximate total equivalent to $380,000.

18. On July 15, 2008, I applied for and received an order to install and operate an electronic tracking device or beeper on the subject parcel from United States Magistrate Judge Maria-Elena James, Northern District of California. I also applied for and received authorization from the same Judge for an anticipatory search warrant for the premises known as 325 Florence Street, Apartment A, Sunnyvale, CA 94086.

19. Continuing on July 15, 2008, the USSS, ICE, and USPIS affected a controlled delivery of the subject parcel, under police surveillance, to the designated destination address (that is, 325 Florence Street, Sunnyvale, CA). The following actions, among others, were taken to implement

10

this controlled delivery:

A.    Only a sample of the counterfeit currency was left in the subject parcel for safety and security reasons and the remainder was replaced with a substitute, and the interior contents were dusted with fluorescent powder.

B.    An electronic monitoring device (commonly known as a beeper), was placed in the subject parcel to indicate where it is generally located and when the parcel is opened.

C.    An undercover USPIS Inspector posed as the USPS delivery person and affected the subject parcel's delivery to the addressee at the designated destination address.

20.    Inspector Eva Chan advised that she delivered the subject package to 325 Florence Street, Apartment A, Sunnyvale, California. She further advised that she delivered the subject package to Mei Ling Chen and obtained Chen's signature, confirming receipt of the subject package. Inspector Chan's arrival and departure at this address were noted by Inspectors and special agents who were conducting surveillance. USSS SA Daniel Yang noted that the delivery took place at 12:00 noon. At this time the conditions to validate the search warrant for the subject address were completed.

21.    SA's and Inspectors remained in surveillance positions in the area of the residence. The beeper alarm activated, indicating that the subject parcel had been opened. The alarm activation

11

was noted by SA Yang and Postal Inspector Keith Silva. SA Yang further noted that the alarm activated at 12:25 PM.

22. USSS, ICE, and USPIS affected the search warrant soon after the alarm activated. Upon my entry into the residence, I noticed a person who I believed to be Mei Ling Chen coming down the stairs of the residence. I communicated to her to come down the stairs and out the front door for her safety, while the residence was secured. I asked her if she spoke English and she stated that she spoke "a little." I asked if she was "Mei." She did not seem to understand the question, so I asked her name. She replied "Chen Mei Ling." I advised her to stay outside the residence at that time and returned into the residence to speak with the other female located inside the residence.

23. SA Yang and I interviewed Sandy Chang, who was in the residence with two small children at the time the search warrant of the residence was executed. I explained that we had a search warrant for the premises. Sandy Chang advised, in part, that Mei Ling Chen is the former spouse of Sam Chang, who is the resident of Apartment A. She also stated that she (Sandy Chang lives in apartment B) Sandy Chang also stated that Chen was in the U.S. on business from Kaohsiung and that every time Chen comes, there is a delivery of a package.

24. I advised SA Yang, who is fluent in Mandarin, to go outside and explain the enforcement action that was taking place to Chen. I also advised him to ask Chen to accompany SA Yang and a Sunnyvale Police Officer to the Sunnyvale Police Services office to execute the search warrant for Chen's DNA and fingerprints, which I had also authorization from from United States

12

Magistrate Judge Maria-Elena James.

25.     SA Yang later advised me that Chen had agreed to accompany him to Sunnyvale Police Services Office. SA Yang also advised me that Cheng consented to a search of the premises. SA Yang obtained a signed consent to search form from Chen, consenting to the search of the premises and automobiles along with her luggage and purse.

26.     During the search of the premises, Sam Chang arrived. I advised Sam Chang that we had a search warrant for the premises. Sam Chang advised, in part, that he was the sole resident of apartment A and that Mei Ling Chen is his former spouse. He also stated that Chen arrived at San Francisco Airport on July 7th and was visiting from Kaohsiung. He further stated that Chen was staying at his residence during this visit and indicated that she was staying in the bedroom on the front side of the residence. Sam Chang noted that he did not enter the front bedroom, while Chen was staying in the residence. Sam Chang also stated that he gave Chen a ride to "Marina Supermarket," which he described as being in Cupertino near Stevens Creek Blvd. He stated that Chen bought food at the supermarket and that she paid with three $100 bills, which she obtained from her black purse. I later showed him a black purse that was located in the front bedroom of the residence and he identified it as her purse. He also identified a boxed computer as having been purchased by Chen at Costco.

27.     I was advised by USSS SA Jeff Jones that, in part, the following items were located in the front bedroom; the computer and the purse identified by Sam Chang, expensive purses and wallets from Coach and Louis Vuitton, cash receipts from Coach, Louis Vuitton, Footlocker and

13

Bath & Body Works at the Westfield Mall in Santa Clara, California. A wallet containing
$12,500 in counterfeit $100 notes. SA Jones advised that genuine U.S. currency of various
denominations was located in a zippered pouch inside the purse identified by Sam Chang. From
my training and experience, I know that persons involved in passing counterfeit often keep
genuine currency separated from counterfeit currency. The express parcel box was also located
in the front bedroom. The top of the box was open, but the contents appeared to be undisturbed.

28.     SA Jones advised me that on July 15, 2008, he went to Coach, Louis Vuitton, Footlocker
and Bath & Body Works at the Westfield Mall in Santa Clara, California. He located and
viewed video surveillance footage of Mei Ling Chen making purchases at Coach and Louis
Vuitton. Based on my training and experience, I know that persons involved in passing
counterfeit often make cash purchases with counterfeit currency of expensive items and return
those items for cash refunds at a later date.

29.     Prior to Mei Ling Chen's departure for Sunnyvale Police Services Office, Postal
Inspector Keith Silva checked her hands with a ultra-violet light. He advised me that his exam
indicated fluorescent powder. Based on this information, I believe that Chen had handled the
interior contents of the subject parcel after the controlled delivery and prior to the service of the
search warrant of the premises.

30.     I advised Chen through the interpretation of SA Yang into Mandarin that she was being
arrested for violation of 18 U.S. Code 472 for bringing counterfeit currency into the United
States and keeping it in her possession.

14

31.     Based on the foregoing I believe Mei Ling Chen brought counterfeit U.S. currency into

the United States and kept it in her possession with intent to defraud and therefore seek a

criminal complaint against Mei Ling Chen for violation of Title 18, United States Code, Section

472.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my

knowledge and belief.

William P. Bishop

Subscribed and sworn to before me,
this 6th day of July 2008,
in San Francisco, California.

MARIA-ELENA JAMES
U.S. MAGISTRATE JUDGE